# IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

No. 16-36072

## YONAS FIKRE,

Plaintiff-Appellant

v.

## THE FEDERAL BUREAU OF INVESTIGATION; et al.,
Defendants-Appellees.

_____

Appeal from the United States District Court for the District of Oregon
No. 3:13-CV-00899-BR

_____

Appellant's Brief of Plaintiff-Appellant Yonas Fikre

_____

Gadeir Abbas, *pro hac vice*
(gabbas@cair.com)
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, D.C. 20003
Phone: 202.488.8787

Lena Masri, *pro hac vice*
(lmasri@cair.com)
Council on American-Islamic Relations
453 New Jersey Avenue, S.E.
Washington, D.C. 20003
Phone: 202.488.0833

Brandon Mayfield, OSB 000824
(mayfieldbrandon@hotmail.com)
14631 SW Millikan Way
Beaverton, OR 97003
Phone: 503.941.5101

Thomas H. Nelson, OSB 78315
(zigzagtom@gmail.com)
20820 E. Glacier View Road
Zigzag, OR 97049
Phone: 503.622.3262

*Counsel for the Appellant*

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT .......................................................1

NINTH CIRCUIT LOCAL RULE 28-2.6 STATEMENT .......................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .......................................1

STATEMENT OF THE CASE........................................................3

STATEMENT OF FACTS ..........................................................4

SUMMARY OF ARGUMENT ........................................................12

STANDARD OF APPELLATE REVIEW...............................................14

ARGUMENT .......................................................................16

I.   This Court Must Reject Defendants' Attempt to Moot Fikre's Claims by Removing Him from the No-Fly List Years After the Start of Litigation...............16

   A.   The Government's Voluntary Cessation of Its Challenged Conduct by Removing Fikre from the No-Fly List Without Explanation Years After the Litigation Began Does Not Moot His No-Fly List Claims .................................16

   B.   Independently, Fikre's No-Fly List Claims Are Not Moot Because the Government's Challenged Conduct Is Capable of Repetition While Evading Review .....................................................................27

II.   The Complaint States a Fourth Amendment Claim for Unlawful Surveillance, Search, and Seizure .................................................................33

III.   The District Court Improperly Concluded that Declaratory Relief Was Not Available for the Fourth Amendment Claim .........................................41

CONCLUSION .....................................................................43

CERTIFICATE OF COMPLIANCE........................................................................45

CERTIFICATE OF SERVICE ............................................................................46

# TABLE OF AUTHORITIES

**Cases:**

*Abdi v. McCabe, et al.*,
    No. 17-CV-00622-DB (D. Utah 2017) ........................................ 31, 32
*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013)............................................................................18
*Barnes v. Healy*,
    980 F.2d 572 (9th Cir. 1992) .............................................................24
*Bell Atl.Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................... 15, 16
*Bell v. City of Boise*,
    709 F.3d 890 (9th Cir. 2013) ...................................................... 18, 22
*Berger v. New York*,
    388 U.S. 41 (1967)............................................................................36
*Biodiversity Legal Found. v. Badgley*,
    309 F.3d 1166 (9th Cir. 2002) ...........................................................24
*City of Mesquite v. Aladdin's Castle, Inc.*,
    455 U.S. 283 (1982)................................................................... 17, 20
*Cleveland v. Policy Mgmt. Sys. Corp.*,
    526 U.S. 795 (1999)..........................................................................37
*Cooper v. Pickett*,
    137 F.3d 616 (9th Cir. 1997) .............................................................15
*Dunlap v. Credit Protection Ass'n, L.P.*,
    419 F.3d 1011 (9th Cir. 2005) ...........................................................15
*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
    528 U.S. 167 (2000)............................................................. 15, 18, 24
*Gerstein v. Pugh*,
    420 U.S. 103 (1975)................................................................... 28, 29
*Gilligan v. Jamco Development Corp.*,
    108 F.3d 246 (9th Cir. 1997) .............................................................16
*Ibrahim v. Dep't of Homeland Sec.*,
    62 F. Supp. 3d 909 (N.D. Cal. 2014)..................................................21
*Katz v. U.S.*,
    389 U.S. 347 (1967)..........................................................................36

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ............................................................15
*Landers v. Quality Commc'ns, Inc.*,
  771 F.3d 638 (9th Cir. 2015) ..............................................................16
*Latif v. Holder*,
  686 F.3d 1122 (9th Cir. 2012) ............................................................28
*Mayfield v. U.S.*,
  588 F.3d 1252 (9th Cir. 2009) ....................................................... 42, 43
*McCormack v. Herzog*,
  788 F.3d 1017 (9th Cir. 2015) ............................................. 18, 20, 26
*McGary v. City of Portland*,
  386 F.3d 1259 (9th Cir. 2004) ............................................................15
*Molsbergen v. U.S.*,
  757 F.2d 1016 (9th Cir. 1985) ............................................................37
*Nat. Res. Def. Council v. Cty. of Los Angeles*,
  840 F.3d 1098 (9th Cir. 2016) ............................................................23
*Oregon Advocacy Ctr. v. Mink*,
  322 F.3d 1101 (9th Cir.2003) .............................................................28
*Rev Op Grp. v. ML Manager LLC (In re Mortg. Ltd.)*,
  771 F.3d 623 (9th Cir. 2014) ..............................................................16
*Roe v. Wade*,
  410 U.S. 113 (1973)................................................................... 27, 30
*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) ......................................... 18, 19, 22
*Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*,
  581 F.3d 1169 (9th Cir. 2009) ........................................... 14, 23
*Rowe v. Educ. Credit Mgmt. Corp.*,
  559 F.3d 1028, 1029-30 (9th Cir. 2009) ............................................15
*Shapiro v Thompson*,
  394 U.S. 618 (1969)...........................................................................30
*Tanvir v. Lynch*,
  128 F. Supp. 3d 756 (S.D.N.Y. 2015) ...............................................28
*Tarhuni v. Lynch*,
  129 F. Supp. 3d 1052 (D. Or. 2015) ....................................... 21, 22, 28
*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
  __ U.S. __, 137 S.Ct. 2012 (2017)....................................................19
*U.S. v. Cotterman*,
  709 F.3d 952 (9th Cir. 2013) (en banc) .............................................36

iv

*U.S. v. Howard*,
  429 F.3d 843 (9th Cir. 2005) ................................................................. 27, 31, 32
*U.S. v. Laerdal Mfg. Corp.*,
  73 F.3d 852 (9th Cir. 1995) .................................................................24
*U.S. v. Oakland Cannabis Buyers' Co-op.*,
  532 U.S. 483 (2001) ...............................................................................26
*U.S. v. Sanchez-Gomez*,
  859 F.3d 649, 658 (9th Cir. 2017) (en banc) ...............................29
*U.S. v. W. T. Grant Co.*,
  345 U.S. 629 (1953) ...............................................................................24
*U.S. v. Warshak*,
  631 F.3d 266, 288 (6th Cir. 2010) ...................................................36

**Statutes:**

5 U.S.C. § 702 ...............................................................................................1
18 U.S.C. § 2516 .........................................................................................39
28 U.S.C. § 1291 ...........................................................................................1
28 U.S.C. § 1331 ...........................................................................................1
28 U.S.C. § 1367 ...........................................................................................1
28 U.S.C. § 2201 ...........................................................................................1
28 U.S.C. § 2202 ...........................................................................................1
50 U.S.C. § 1802 .........................................................................................39
50 U.S.C. § 1804 .........................................................................................39
50 U.S.C. § 1881a .......................................................................................39

**Rules:**

Fed. R. Civ. P. 12(b)(6)..............................................................................15
Fed. R. Civ. P. 54(c)...................................................................................26
Fed. R. Civ. Pro. 8(d)(2) ..........................................................................37
Fed. R. Crim. Pro. 41 ................................................................................39

**Constitutional Provisions:**

U.S. Const., amd. IV ........................................................................... passim


**Legislative Materials:**

*Commerce, Justice, Science, And Related Agencies Appropriations For Fiscal Year 2017: Hearing Before the S. Subcomm. of the Comm. on Appropriations*, 114th Cong. (S. Hrg. 114, Jan. 20, 2016), at p. 76 (statement of Atty. Gen. Loretta Lynch)........................................................................................33


**Other Authorities:**

Homeland Security Presidential Directive 6 (HSPD-6), 2003 Pub. Papers 1174 (Sept. 16, 2003)...................................................................................32

*The Guardian*, "No fly list used by FBI to coerce Muslims into informing, lawsuit claims" (Apr. 22, 2014), *available at* https://www.theguardian.com/world/2014/apr/23/no-fly-list-fbi-coerce-muslims ................................................................................................................28

**JURISDICTIONAL STATEMENT**

The district court had jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, 2201, 2202, and 5 U.S.C. § 702.  This Court has jurisdiction over this appeal from a final judgment pursuant to 28 U.S.C. § 1291.  Final judgment was entered on October 24, 2016.  See ER, Ex: J p. 171-173, Docket No. 108.  Appellant Yonas Fikre filed a timely Notice of Appeal on December 23, 2016.  ER, Ex: K, P. 174-177, Docket No. 109.

**NINTH CIRCUIT LOCAL RULE 28-2.6 STATEMENT**

Appellant Yonas Fikre has no knowledge of any pending cases related to the issues herein.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

This lawsuit arises out of two distinct but interrelated courses of conduct by the United States government directed at Appellant Yonas Fikre.  The first is the government's placement without good cause of Fikre on the No-Fly List while he was abroad, interfering with his attempts to return to the United States.  The second is the government's electronic surveillance of Fikre's communications while in the United States.

(1).   The complaint alleges that the government violated Fikre's substantive and procedural due process rights by placing and maintaining him on the No-Fly List.  During the pendency of this action, the government removed Fikre from the No-Fly List without explanation, without acknowledging that the initial placement was erroneous, and without any assurance that Fikre would not be placed on the list again in the future.  Are Fikre's substantive and procedural due process claims moot?

(2).   The complaint alleges that Fikre's Fourth Amendment rights were violated by Defendants' interception, search, and seizure of Fikre's telephone calls, emails, and text messages because the interceptions were not authorized by an appropriate warrant, were not supported by probable cause, and were unreasonable.  Do the complaint's allegations state a claim for relief under the Fourth Amendment?

(3).   Did the district court err in dismissing Fikre's prayer for declaratory relief on his Fourth Amendment claim?

## STATEMENT OF THE CASE

This is an action brought in federal court for numerous claims by plaintiff-appellant Yonas Fikre against the United States and its several agencies and against individuals employed by the federal government for their surveillance, targeting, coercion, imprisonment, torture, and restriction on his right to travel, for the purposes of interrogation, turning him into an informant, and to gather information by a means otherwise prohibited and in violation of his Fifth and Fourth Amendment rights.

The operative complaint is the fifth amended complaint. ER Ex: F p. 69-115, Docket 87.  Fikre does not appeal dismissal of Claim Thirteen (FISA—electronic surveillance), Claim Fourteen (Stored Communications Act—electronic surveillance) , and Claim Fifteen (Wiretap Act—electronic surveillance).  The claims against the individual defendants have been dismissed and are not the subject of this appeal, leaving at issue Claim One (substantive due process—No-Fly List), Claim Three (procedural due process—No-Fly List), and Claim Twelve (Fourth Amendment—electronic surveillance) of the fifth amended complaint.

Defendants placed Fikre on the No-Fly List as means of coercion and conditioned his removal from the No-Fly List upon his agreement to become a

government informant in violation of his Fifth Amendment substantive and procedural due process rights. In intercepting Fikre's private communications without a warrant or probable cause for domestic law enforcement purposes and to share that information for a prohibited purpose the government has violated the limits of the Fourth Amendment.

## STATEMENT OF FACTS

Yonas Fikre is a 33-year-old naturalized American citizen of Eritrean descent. Fikre came to the United States as a youth. *See* Fifth Amended Complaint ("5AC") ¶4, and 28, ER-73,77. Fikre moved to Portland, Oregon in 2006, where he worked for a cellular telephone company. In late 2009, Fikre decided to use his experience in the cellular telephone industry to pursue the business of distributing and selling consumer electronic products in East Africa. *See* 5AC ¶29, ER-77.

In 2010 while Fikre was in the United States, he and his brother, Dawit Woldehawariat, worked together to set up a business venture abroad. Fikre and Woldehawariat discussed this venture by telephone, email, and text message. 5AC ¶77, ER-90. As a result of discovery and filings in the Southern District of California criminal case against Fikre that was ultimately dismissed, Fikre learned that Defendants had intercepted the contents of the communications

between Fikre and Woldehawariat. *See* 5AC ¶78, ER-91. The interceptions were conducted for domestic and not a foreign surveillance purposes, without a warrant, and without certification or probable cause that the primary target was a foreign power or agent of a foreign power. 5AC ¶¶79, 146, ER-91, 107. These intercepted communications formed the basis for the meeting in the Khartoum Embassy and have been transmitted to several United States government agencies and foreign governments. *See* 5AC ¶¶80-82, ER 91.

Fikre and his brother are individuals, U.S. citizens, and are not and never have been agents of a foreign power. *See* 5AC ¶146, ER-107. In 2010, Fikre traveled to Sudan where some of his extended family lives. In Sudan, Fikre informed the United States Embassy in Khartoum of his presence in the country and his intention to pursue business opportunities there. 5AC ¶29, ER-77-78. On April 21, 2010, Fikre received a telephone call from the Embassy requesting Fikre to contact Defendant Noordeloos, who was acting under the pretense of being an Embassy official working for the State Department. 5AC ¶32, ER-78.

The next morning Fikre arrived at the Embassy and was met by Noordeloos and Defendant John Doe I (believed to be Jason Dundas), who informed Fikre that they worked for the FBI Field Office in Portland, Oregon. When he was told Noordeloos and Dundas were FBI agents from Portland, Fikre

requested to be represented by his legal counsel during any interrogation. Noordeloos, however, informed Fikre that he could not return to the United States to confer with his Oregon-based legal counsel because Fikre had been placed on the No-Fly List.  5AC ¶¶33-34, ER-78-79.  The ensuing interrogation lasted for several hours, until the end of the business day. Throughout the course of the interrogation Noordeloos and Dundas questioned Fikre about the As-Saber Mosque in Portland where Fikre had attended prayer services.  In addition, Noordeloos and Dundas questioned Fikre about the source of financial support for his business endeavors and told him that U.S. sanctions made his business activities in Sudan illegal.  Finally, Noordeloos asked Fikre to be an informant for the FBI in exchange for "substantial compensation" and removal from the No-Fly List.  *See* 5AC ¶¶35-36, ER-79-80.  Fikre responded he did not wish to become an informant. At the end of the business day Noordeloos suggested they resume the discussion the following day. Fikre agreed.  5AC ¶36, ER-79.

The following morning Fikre called Noordeloos on the telephone and informed him that he did not wish to meet further with Dundas and Noordeloos. Noordeloos became agitated when Fikre again stated he did not want to be an informant.  Noordeloos concluded the conversation by telling Fikre:  "Whenever you want to go home you come to the embassy."  On May 4, 2010, a little more

6

than a week after their final conversation, Noordeloos emailed Fikre as follows: "Yonas, Thanks for meeting with us last week in Sudan. While we hope to get your side of issues we keep hearing about, the choice is yours to make. The time to help yourself is now. Be safe in Sudan, Dave Noordeloos." *See* 5AC ¶38, ER-80.

Fikre left Sudan on approximately June 15, 2010. On approximately September 15, 2010, Fikre traveled to the United Arab Emirates (UAE) to pursue similar business interests. Fikre obtained a residency permit in the UAE in order to conduct business, and he invested substantial financial resources provided by his family for that purpose. 5AC ¶40, ER-81. On the evening of June 1, 2011, Fikre was forcibly taken from his home by persons who he later learned were Emirati secret police. The police seized some of Fikre's personal property, blindfolded him and drove him for approximately two hours, ultimately to put him in a windowless cell with only a bed. 5AC ¶41, ER-81.

The next morning Fikre was led to a room in which he would undergo the first of repeated interrogations during 106 days of imprisonment. During these interrogations Fikre was blindfolded while he was questioned in English for extended periods of time. Periodically Fikre was able to peek beneath his blindfold and view the shoes and lower torsos of his interrogators, some of whom

wore Western clothes.  5AC ¶¶43, 44, 48, ER-82-83.The substance of the

interrogations focused on the activities, fundraising, and leadership of the As-

Saber Mosque.  The questions and suggestions of his UAE interrogators were the

same he heard from agents Noordeloos and Dundas in Khartoum.  The

interrogators urged Fikre numerous times to cooperate with the FBI by becoming

an informant.  5AC ¶44, ER-82.  Fikre was subjected to multiple threats and

beatings throughout the course of his confinement.  5AC ¶46, ER-82-83.

On June 14, 2011, Fikre took a lie detector test during which he was

questioned about whether his financial arrangements involved soliciting funds for

al-Qaeda, but he was not asked about the As-Saber Mosque.  5AC ¶50, ER-84.

His interrogators repeatedly told Fikre that he would be released soon or

tomorrow, but he was not released.  Fikre considered refusing food in an attempt

at suicide, but he was told he would be force-fed.  5AC ¶59, ER-86.  Near the end

of his detention Fikre again asked an interrogator whether the FBI had requested

his detention and interrogation.  This time the interrogator confirmed the FBI had

made such a request and that American and Emirati authorities work closely on a

number of such matters.  5AC ¶60, ER-86.

On September 14, 2011, Fikre was told he would be released that day.

Interrogators took money from Fikre's wallet to purchase an airline ticket back to

the United States, but they were told Fikre would not be allowed to return to the United States by air because he was on the No-Fly List. Thus, Fikre chose to fly to Sweden where, in the belief that he might still be in danger of abuse in countries that condone torture, Fikre submitted an application for asylum. Fikre was unable to obtain a refund for the unused ticket from the UAE to the United States and thus to date remains uncompensated for his monetary damages. 5AC ¶¶65-66; item 4 of Prayer for equitable relief, ER-87,114.

On April 18, 2012, Fikre and his Swedish attorney held a press conference to detail his experiences in Sudan and the UAE and to announce that he would seek asylum in Sweden. 5AC ¶¶61-62, ER-86-87. Less than two weeks later Fikre and two other individuals were indicted in the United States District Court for the Southern District of California for "conspiracy to structure monetary transfers" from his family to him between April 14, 2010, and April 19, 2010. 5AC ¶70, ER-88. The charges against Fikre were ultimately dismissed. In the fall of 2013 Defendants' counsel suggested Fikre should visit the U.S. Embassy in Stockholm to make the necessary arrangements to return to the United States. Because the government would not assure Fikre (1) that his safety from "extra-judicial actions" was guaranteed and (2) that he would be permitted to leave the United States after he returned, Fikre declined to return to the United States.

5AC ¶71, ER-89. In November 2013, Fikre filed a DHS TRIP inquiry, and on January 23, 2014, DHS informed Fikre that changes to his status were not warranted at that time. DHS, however, did not verify Fikre's status on the No-Fly List. 5AC ¶72, ER-89. While Fikre was in Sweden, Fikre's wife sought and received a divorce from Fikre because of the separation resulting from Fikre's inability to return to the United States and because of the stigma attached to Fikre's placement on the No-Fly List. 5AC ¶73, ER-89-90.

In early 2015, Fikre's asylum application in Sweden was denied. On February 12, 2015, after the parties stipulated that DHS would reconsider Fikre's DHS TRIP application under the new procedures in light of the district court's June 24, 2014, Opinion and Order in *Latif v. Holder*, 28 F. Supp. 3d 1134 (D. Or. 2014), DHS informed Fikre that he remained on the No-Fly List because he had been "identified as an individual who may be a threat to civil aviation or national security." DHS did not provide any additional factual reasons for Fikre's designation. On February 14, 2015, the Swedish government transported Fikre to Portland, Oregon, by private jet. *See* 5AC ¶¶74-75, ER-90.

Fikre filed his original complaint on May 30, 2013 and his fifth and final amended complaint ("5AC") on November 29, 2015. Docket No. 1, and 87. The Government Defendants moved to dismiss Fikre's fourth amended complaint,

including under FRCP 12(b)(6) for failure to state a claim. Docket No. 69. The district court granted Defendants' motions in part and denying in part with leave to amend the complaint which was to include and address the *Monell* factors. *See* transcript at page 73-75- ER-12-18; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). The order denied the motion to dismiss the Fourth Amendment claim seeking injunctive relief but granted it for declaratory relief on the mistaken reading of the mootness findings in this Court's *Mayfield* opinion. *Mayfield v. U.S.*, 588 F.3d 1252 (9th Cir., 2009). As a result, Fikre filed a motion for reconsideration pointing out the errors in this regard. See Motion for Relief filed November 25, 2015 Docket no. 84. The *Monell* factors the court sought are inapplicable to the present claims against the federal government. However, in an effort to address the court's concerns, Fikre filed a fifth amended complaint that included a statement that "it is a policy, custom, and officially sanctioned practice of defendants to routinely intercept, search, and seize telephone calls, emails, and text messages of Muslim Americans without probable cause that they have committed any crimes or are agents of a foreign power." *See* 5AC ¶141, ER-106.

By Notice filed May 9, 2016 Defendants shared that they were advised by the Terrorist Screening Center that Plaintiff had been removed from the No-Fly

List. The Notice provided no details why Fikre was removed from the list, why he was put on the list, or assurances that he would not be placed back on the list again. The Notice was filed by Defendants' Counsel and the then acting Principal Deputy Assistant Attorney General. See ER-116-119, Docket No. 98.

The district court below after foreclosing additional oral argument, particularly on the FISA surveillance issues, invited a supplemental memo, aimed primarily at addressing why Fikre's removal from the No-Fly List did not make the remaining issues moot. *See* district court order of May 20, 2016, docket 101, and opinion and order docket 105, at Page 4, ER-23. After reviewing the pleadings, the court dismissed all of Fikre's claims including his Fourth Amendment claims on the same facts on which the court in its earlier opinion and order upheld the claim (for injunctive relief but not declaratory relief). See opinion and order docket no. 81 at p. 32, ER-51, and final opinion and order docket no. 105 at p. 35, ER-155. Subsequently, Fikre filed his notice of appeal December 23, 2016. ER-174-177.


## SUMMARY OF ARGUMENT

The Court did not take all of Fikre's allegation of material fact and construe them in a light most favorable to Fikre on Fikre's No-Fly List claim and

his Fourth Amendment surveillance claims.

The district court dismissed Fikre's No-Fly List claim, finding it to be moot based on the government's removal of his name from the list. This did not take into account the additional claims for injunctive relief and is not consistent with the requirements of this Court's "voluntary cessation" mootness jurisprudence. Under the mootness test laid out in those opinions, voluntary cessation results in mootness only in instances where the government has changed a policy. Removing Fikre's name from the list does not change the policy. Fikre has alleged that "it is a policy, custom and practice of defendants to place individuals on the no fly list in order to coerce them into becoming informants/agents provocateur for the FBI." 5AC ¶97, ER-97. An individualized decision to remove Fikre from the list does not address the improper basis for his placement on the list in the first place and that single decision changes the policy in absolutely no way.

The district court below was inconsistent in at first allowing injunctive relief for Fikre's Fourth Amendment violation claim where he had not alleged it happened under FISA authority and then later dismissed the claim by finding contrary to the fifth amended complaint that Fikre had alleged it happened under FISA authority. Additionally the court below misapplied this Court's *Mayfield*

opinion in concluding that declaratory relief was not available for Fikre's Fourth Amendment claim. The court did not reach the merits of Fikre's claim for declaratory relief but inasmuch as it cited cases (in the Second and Third Circuits) in support of a finding on the merits that Defendants' surveillance was constitutional, any such conclusion would be premature without a fully developed record.

## STANDARD OF APPELLATE REVIEW

A dismissal for mootness is reviewed de novo. *Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1172 (9th Cir. 2009). A defendant's voluntary cessation of the conduct challenged in the complaint does not ordinarily moot the claim. "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.' '[I]f it did, the courts would be compelled to leave "[t]he defendant ... free to return to his old ways." ' In accordance with this principle, the standard we have announced for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.' The 'heavy

burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000).

A dismissal for failure to state a claim is reviewed de novo. *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005); *Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011, 1012 n.1 (9th Cir. 2005). The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must accept "all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029-30 (9th Cir. 2009) (quoting *Knievel v. ESPN*, 393 F.3d at 1072). Dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim "is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim which would entitled him to relief." *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004). A court must limit its review to the contents of the complaint, take all allegations of material fact as true, and view the facts in the light most favorable to the nonmoving party. *Cooper v. Pickett*, 137 F.3d 616, 622 (9th Cir. 1997). When reviewing the sufficiency of the complaint, "[t]he issue is not whether a plaintiff will ultimately prevail but

whether the claimant is entitled to offer evidence to support the claims." *Gilligan v. Jamco Development Corp*., 108 F.3d 246, 249 (9th Cir. 1997). "In evaluating whether a complaint states a plausible claim for relief, we rely on 'judicial experience and common sense' to determine whether the factual allegations, which are assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Landers v. Quality Commc'ns, Inc*., 771 F.3d 638, 641 (9th Cir. 2015). "[C]ourts cannot examine statements in an answer or other pleading and decide, on the basis of their own intuition that the statements are implausible or a sham and thus can be disregarded. Factual allegations in a pleading, as opposed to legal conclusions, must be presumed to be true." *Rev Op Grp. v. ML Manager LLC (In re Mortg. Ltd.)*, 771 F.3d 623, 632 (9th Cir. 2014) (citing *Twombly,* 550 U.S. at 555).

# ARGUMENT

I. **This Court Must Reject Defendants' Attempt to Moot Fikre's Claims by Removing Him from the No-Fly List Years After the Start of Litigation**

    A. **The Government's Voluntary Cessation of Its Challenged Conduct by Removing Fikre from the No-Fly List Without Explanation Years After the Litigation Began Does Not Moot His No-Fly List Claims**

At the time Fikre filed this lawsuit in 2013 and for years before and after, he

was on the No-Fly List.  The government placed Fikre on the No-Fly List at least

as early as 2011 and reaffirmed his placement on the list as recently as 2015.  See

ER- Ex: C, P. 7-11.  Despite repeated inquiries to the government, no explanation

of the basis for his placement on the list was ever provided.

Only after the district court repeatedly held that Fikre's No-Fly List claims

stated valid claims did the government in May 2016 file a notice with the Court

stating it had removed Fikre from the No-Fly List.   ECF No. 98, ER 116-119.  The

notice gave no basis for the removal and no acknowledgment that the government

had lacked any basis for placing Fikre on the No-Fly List in the first place.  It gave

no assurance that Fikre would not be placed on the list again in the future once the

lawsuit was dismissed.

The Supreme Court has repeatedly made clear that a defendant's voluntary

cessation of a challenged practice in the face of pending litigation, as occurred

here, does not automatically moot a lawsuit.  To the contrary, under the voluntary

cessation doctrine, "the test for mootness . . . is a stringent one" (*City of Mesquite*

*v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 n.10 (1982)) that the defendant bears

the formidable burden of proving:  "[A] defendant cannot automatically moot a

case simply by ending its unlawful conduct once sued.  Otherwise, a defendant

could engage in unlawful conduct, stop when sued to have the case declared moot,

then pick up where he left off, repeating this cycle until he achieves all his unlawful ends. Given this concern, our cases have explained that 'a defendant claiming that its voluntary compliance moots a case bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur.' " *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted, quoting *Friends of the Earth*, 528 U.S. at 190).

This Court has been faithful to Supreme Court precedent and has stringently applied the voluntary cessation test. *See, e.g., McCormack v. Herzog*, 788 F.3d 1017, 1025 (9th Cir. 2015); *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014); *Bell v. City of Boise*, 709 F.3d 890, 898-99 & n. 13 (9th Cir. 2013).

Here, the government failed to carry its formidable burden of proving it is "absolutely clear" that the government will never again place Fikre on the No-Fly List.

The government did not even attempt to establish the necessary facts showing there is no reasonable possibility it will again place Fikre on the list. The government's notice gave no explanation of why Fikre had been placed on the list in the first place or why he had been kept on the list for so long after it was manifest that there was no reasonable basis for continuing to keep him on the list. The notice gave no explanation of why the government, in its 2015 review

applying its revised No-Fly List procedures, had concluded that Fikre should continue to remain on the No-Fly List. The notice gave no explanation of why the government thereafter in 2016 had decided to remove him from the list. And the notice gave no assurance whatsoever that Fikre would not again be placed on the list in the future, much less a promise or representation by the government that it would never do so.

Importantly, the government's removal of Fikre from the No-Fly List was *not* the result of a change in the underlying statutes, regulations, policies, and procedures governing the No-Fly List. The legal environment that authorized Fikre's retention on the No-Fly List in 2015 remains unchanged, meaning that Fikre is equally liable to again being placed on the No-Fly List in the future.[1] And it is those statutes, regulations, policies, and procedures that Fikre is challenging in his No-Fly List claims.

Because the government remains free to put Fikre back on the list, his No-Fly List claims are not moot. The government has failed to admit that its

---

[1] Even when the challenged conduct has ceased because of a change in law or policy, mootness is not automatic and the voluntary cessation test still fully applies. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, __ U.S. __, 137 S.Ct. 2012, 2019 (2017) (government policy change did not moot lawsuit because there was no barrier to changing policy back again in the future); *Rosebrock*, 745 F.3d at 971 ("when the Government asserts mootness based on such a [policy] change it still must bear the heavy burden of showing that the challenged conduct cannot reasonably be expected to start up again").

placement of Fikre on the No-Fly List was erroneous and unlawful. It has failed to admit that its No-Fly List procedures were and are unlawful. Without such an acknowledgment, there can be no assurance that Fikre will not again be erroneously placed on the No-Fly List in the future. The government has also failed to identify any steps it has taken to insure against a future erroneous placement of Fikre on the No-Fly List. And the government has not restricted in any manner its freedom to place Fikre on the No-Fly List in the future.

In *Aladdin's Castle*, the plaintiff was challenging an ordinance that the city repealed while the litigation was pending. The Supreme Court held that this voluntary cessation did not moot the case because the city was free to re-enact the ordinance in the future. 455 U.S. at 289. In *McCormack*, a challenge to a law criminalizing abortion brought by a plaintiff charged under the law was not moot even though charges against the plaintiff were dropped and the plaintiff received an offer of immunity, because the defendant prosecutor was free to change course in the future. Here, the government remains equally free to place Fikre back on the No-Fly List in the future.

The fact that any future placement would again occur through a secret process applying secret standards in which Fikre would receive no notice and have no opportunity to see the evidence presented against him further precludes any

conclusion that there is no reasonable possibility that he will again be placed on the No-Fly List. The decision to place an individual on the No-Fly List is a secret decision that is an exercise of discretionary judgment. It is based on a subjective evaluation of derogatory information about the individual with no notice to the individual that the process is even occurring, no notice as to what the derogatory information is, and no opportunity to submit rebuttal evidence before the decision is made.[2]

This case is unlike the *Tarhuni* case where the government made repeated assurances that they would not place plaintiff Tarhuni on the No-Fly List again based on then-current information. *See Tarhuni v. Lynch*, 129 F. Supp. 3d 1052, 1062 (D. Or. 2015). Here the government has made no assurances even though injunctive relief to that effect is sought. *See* 5AC prayer for relief 2(a,b,f,h, and i). Unlike Tarhuni, Fikre seeks both declaratory and injunctive relief. *See Tarhuni* at 1061. Tarhuni only proceeded with claim one for declaratory relief upon removal

---

[2] The district court asserted that the No-Fly List process is fail-safe and error-free: "If an individual does not meet the substantive criteria to be placed or maintained on the No-Fly List, the government *cannot* place or keep the individual on the list." Order at 24 (italics added) ER-144. The district court's assertion that this secret process, conducted without notice to the affected individual, never results in the erroneous placement of an individual on the list is groundless. *See, e.g., Ibrahim v. Dep't of Homeland Sec.*, 62 F. Supp. 3d 909, 916 (N.D. Cal. 2014) ("the way in which plaintiff got on the No-Fly List in the first place was human error by the FBI"). Even the government does not take such an extreme position.

of the No-Fly List.  In *Tarhuni*, the plaintiff was removed from the No-Fly List as a direct response to the district court's case management order, in which it provided the direct judicial imprimatur for Defendants' reconsideration of Tarhuni's DHS TRIP inquiry.  *See Tarhuni* at 1061.  Here, the court's decision was not tied to any such order but instead to Defendants' discretionary act of voluntary cessation of Fikre's inclusion on the No-Fly List, prompted as in other cases (such as *Latif* et al) by filing of litigation.

The district court's analysis fundamentally misconstrued the heavy burden the government faced in seeking a mootness dismissal on the basis of its removal of Fikre from the No-Fly List.  The district court looked to voluntary-cessation cases like *Rosebrock* and *Bell* but misapplied the voluntary-cessation doctrine.  It took the absence of evidence that the government intends to put Fikre on the No-Fly List in the future as affirmative evidence that there is no reasonable probability Fikre will ever again be placed on the No-Fly List.  Order at 24-25, ER-144-145.  In doing so, the district court improperly cast on Fikre the burden of showing that he would likely be placed again on the No-Fly List.

But this Court has emphatically rejected attempts to use the absence of evidence about the government's future conduct as the basis for finding that voluntary cessation has mooted a lawsuit:  "[T]he district court stated that 'the

Court has been provided with no evidence that Defendants will not comply to the fullest extent.' Such analysis 'impermissibly attempts to shift the burden to the Plaintiffs to defeat mootness, when it is the Defendants that bear the heavy burden in this case. A defendant cannot meet this burden solely by claiming that the Plaintiff has not done enough to show the likelihood of further violations." *Nat. Res. Def. Council v. Cty. of Los Angeles*, 840 F.3d 1098, 1104 (9th Cir. 2016) (brackets and some quotation marks omitted); *accord Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency*, 581 F.3d 1169, 1173-75 (9th Cir. 2009) (district court erroneously relied on absence of evidence regarding agency's likely future conduct as basis for mootness finding; instead, it is the agency that "must demonstrate why repetition of the wrongful conduct is highly unlikely") (collecting cases).

The district court compounded its confusion by erroneously applying the "imminent injury" standard of Article III standing to the quite different question of whether injunctive relief was available for Fikre's No-Fly List claims. Order at 26 ER-146. As the Supreme Court has explained, however, there is a fundamental difference in the role the threat of future injury plays in standing versus the role it plays in injunctive relief. "Standing is determined as of the commencement of litigation." *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1171 (9th Cir.

2002).  When at the time litigation is filed there is no ongoing wrongful conduct and only the threat of future wrongful conduct is used as the basis for standing, the threatened injury must be "'certainly impending'" for standing to exist.  *Friends of the Earth*, 528 U.S. at 190.

Here, of course, standing existed at the time Fikre filed his complaint because he was then currently on the No-Fly List, and so the alternative standing requirement of imminent future harm does not apply.

By contrast, the standard for enjoining future occurrences of wrongful conduct that ceases *after* the lawsuit commences is the much lower standard of whether "there exists some cognizable danger of recurrent violation."  *U.S. v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953); *accord U.S. v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854 (9th Cir. 1995).  "Along with its power to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct.  The purpose of an injunction is to prevent future violations, and, of course, it can be utilized even without a showing of past wrongs."  *W. T. Grant Co.*, 345 U.S. at 633 (citations omitted); *accord Barnes v. Healy*, 980 F.2d 572, 580 (9th Cir. 1992).

Thus, "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness."  *Friends of the Earth*, 528 U.S. at

190.  The district court therefore was wrong to say that in the absence of imminent harm no injunctive relief is possible.

The relevant question is whether any relief is possible for Fikre's No-Fly List claims, and the answer is "yes."  The complaint prays for injunctive relief requiring that Fikre receive notice if he is added to or taken off the No-Fly List in the future, that he receive the specific reasons why his name was added to the No-Fly List (including both his past listing and any future listing), and that the threat of placing or maintaining him on the No-Fly List not be used to coerce him into acting as an informant.  5AC, Prayer at 2.f.-2.i, ER-113.  These injunction terms remain both feasible and meaningful even though he is currently not on the No-Fly List.  And although some are procedural in nature, they protect not just his procedural due process interest but also his substantive due process right to travel.  Procedure is never an end in itself; its purpose is to protect underlying substantive rights.  If the government is enjoined to follow these procedures, it reduces the likelihood that it will infringe Fikre's substantive right to travel.  (Thus, the district court was wrong in concluding that there was no possible relief that would benefit his substantive right to travel.  Order at 25, ER-145.)

Moreover, "'[t]he question is not whether the precise relief sought at the time [the case] was filed is still available.  The question is whether there can be *any*

effective relief.'"  *McCormack*, 788 F.3d at 1024 (italics added).  Thus, analysis is not limited to the relief prayed for in the complaint, nor could it be because any exercise of equitable discretion at the end of the case must be based on the facts established in the trial record and may extend to any relief to which the plaintiff is entitled, whether or not prayed for in the complaint.  "Every . . . final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Fed. R. Civ. P. 54(c).  "'The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case.  Flexibility rather than rigidity has distinguished it.'"  *U.S. v. Oakland Cannabis Buyers' Co-op.*, 532 U.S. 483, 496 (2001).

Other terms that might be appropriate to include in an injunction include, for example, the purging of any unsubstantiated derogatory information about Fikre that remains in any government database; providing him with an acknowledgment that his placement on the No-Fly List was erroneous; providing him with a statement of reasons why he was removed from the No-Fly List; providing him with notice of any future consideration of him for the No-Fly List and an opportunity to respond and present evidence before a decision is made whether to place him on the No-Fly List.

Fikre also requested declaratory relief declaring that the government violated his substantive due process right to travel and his procedural due process rights. 5AC, Prayer at 1.c.,1.e, 1.h., ER-110-111.  That relief is completely unaffected by the government's removal of him from the No-Fly List, and is discussed further in section III below.

> **B.     Independently, Fikre's No-Fly List Claims Are Not Moot Because the Government's Challenged Conduct Is Capable of Repetition While Evading Review**

A second, independent exception to mootness also applies here.  Mootness does not preclude a court from asserting jurisdiction if the injury at issue is "capable of repetition" but "evad[es] review." *Roe v. Wade*, 410 U.S. 113, 125 (1973).  The doctrine permits jurisdiction even in cases in which it is "no longer possible to remedy the particular grievance giving rise to the litigation." *U.S. v. Howard*, 429 F.3d 843, 848 (9th Cir. 2005).  A claim evades review if it is "by [its] nature temporary." *Id.*  And a claim is capable of repetition if the "constitutional violation [is] likely to be repeated." *Id.*  If an "ongoing government policy" inflicts the injury, the litigant need not be the person the policy injures again. *Id.*  The litigant must demonstrate only that there is a "class of persons suffering the deprivation" who maintain a "continuing live interest in the case." *Gerstein v.*

*Pugh*, 420 U.S. 103, 111 (1975).

The unlawful burden that the defendants inflicted upon Fikre's right of movement is both capable of repetition and evading of review. First, Fikre's right of movement claim evades review because it is inherently transitory. In nearly every case brought challenging the constitutionality of the No-Fly List the aggrieved plaintiffs are removed after filing of the complaint or allowed a temporary waiver to return home. *See Latif v. Holder*, 686 F.3d 1122, 1126 n.4 (9th Cir. 2012); *Tarhuni*, 129 F. Supp. 3d at 1059.

A case is capable of repetition when the defendants are challenging an ongoing government policy. *Oregon Advocacy Ctr. v. Mink*, 322 F.3d 1101, 1118 (9th Cir.2003). Fikre has alleged that "It is a policy, custom, and practice of defendants to place individuals on the No-Fly List in order to coerce them into becoming informants/*agents provocateur* for the FBI. *See* 5AC ¶97, ER-95; *see also Tanvir v. Lynch,* 128 F. Supp. 3d 756, 759 (S.D.N.Y. 2015); *The Guardian*, "No fly list used by FBI to coerce Muslims into informing, lawsuit claims" (Apr. 22, 2014), *available at* https://www.theguardian.com/world/2014/apr/23/no-fly-list-fbi-coerce-muslims. This is not alleged by mere conjecture but by concrete and detailed facts supporting the claim that such a policy was used against Fikre. *See* 5AC ¶37, ER-80. This, coupled with the alleged fact that Defendants utilize

policies aimed at Muslims (*see* 5AC ¶141, ER-106), means there is every reason to believe the same actions, including placing of Fikre back onto the No-Fly List are capable of happening again. All facts that are not speculative or conclusory must be accepted as true and must be interpreted liberally in a light most favorable to the non-moving party.

The challenged policy is not only capable of use again vis-a-vis Fikre personally but affects a broad range of potential persons that may be unable to effectively challenge their status. As this Court has recently elaborated, "Functional class actions share the same three features that animated the Supreme Court in *Gerstein*: They challenge not merely individual violations, but also broader policies or practices. *See id.* at 1118. Thus, they consist of continually changing groups of injured individuals who would benefit from any relief the court renders." *U.S. v. Sanchez-Gomez*, 859 F.3d 649, 658 (9th Cir. 2017) (en banc).

The right of movement guarantees citizens "free ingress" which, in concrete terms, protects a citizen's movement returning from abroad into the United States. When the defendants place citizens on their No-Fly List only after they depart the country, the defendants injure returning citizens, such as Fikre, by forbidding them from utilizing air travel back to the United States. This is such an obvious unconstitutional burden on the fundamental right of movement that it hardly

warrants extended analysis.[3]

But citizens like Fikre who encounter Defendants' unconstitutional burden by attempting to exercise their right to return will attempt to always expend great effort to return to the United States in some manner. For example, in this case, Fikre retained a team of attorneys—some in Sweden and others in the United States—as part of his attempt to return to Oregon. He initiated litigation and made his case known to the public. And years after his legal case began, for reasons that remain unknown, completely discretionary, the defendants removed Yonas Fikre from the No-Fly List.

It is not at all common for American citizens to be stranded abroad for years as was Mr. Fikre. A citizen who has the capacity to return to the United States will normally find some way, however difficult, to return to the United States "before the usual appellate process is complete." *Roe v. Wade*, 410 U.S. at 125. If this Court finds that Fikre's right of movement claim does not "evad[e] review," then such litigation "seldom will survive much beyond the trial stage," because a litigant would then have to stay abroad and maintain the intent to return to the United States for years while languishing abroad. *Id.* If the Ninth Circuit adopts

---

[3] *See Shapiro v Thompson*, 394 U.S. 618 (1969), where Justice Stewart noted in a concurring opinion that "it is a right broadly assertable against private interference as well as governmental action. Like the right of association, ... it is a virtually unconditional personal right, guaranteed by the Constitution to us all." *Id*. at 643.

the lower court's mootness rationale, the judiciary will *never* reach the merits of anyone's substantive due process claim that citizens have a fundamental right of movement that includes the right to travel unimpeded by the federal government back to their country.

Second, the defendants maintain an "ongoing government policy" of doling out flight bans to innocent citizens—persons who have neither been arrested nor charged with a crime—via its No-Fly List. This "ongoing government policy" is capable of repetition, because the same policy "will be [used] against someone" else in the future.[4] *Howard*, 429 F.3d at 847. In *Howard*, criminal defendants challenged a government policy that shackled their legs during initial court hearings. 429 F.3d at 847. When the criminal defendants brought suit, however, the government policy no longer injured them, because it did not require the defendants to be shackled at later hearings to which they now attended. Their claim was moot. But *Howard* still asserted jurisdiction over the moot claim, because the criminal defendants "represent[ed] interests broader than their own" insofar as the government policy would injure future criminal defendants. *Id.* at 849. *Howard* thus held that the "continued and uncontested existence of the policy

---

[4] The *Abdi* case, initiated in June 2017 in Utah's federal district court, shows that the defendants continue to strand American citizens abroad by placing them on the No-Fly List only after they fly overseas. *See Abdi v. McCabe, et al.*, No. 17-CV-00622-DB (D. Utah 2017).

that gave rise to the legal challeng[e]" conclusively demonstrates that the injury is capable of repetition. *Id.* at 848 (citing quotations omitted).

So too, here, the defendants ongoing policy of placing citizens abroad on the No-Fly List guarantees that the defendants will subject others to the injuries they inflicted upon Fikre. To begin with, this case is not about aberrational government conduct. This case is about the systematic violation of the right of movement via the defendants' No-Fly List. Indeed, the underlying legal authority for the No-Fly List —HSPD-6—is still in effect and there is no indication that implementation has changed in any manner. *See* HSPD-6.[5]

The *Abdi* case provides corroboration of the No-Fly List's unchanged nature, the defendants have used its No-Fly List as recently as June 2017 to strand an American citizen abroad. Because TSC does not disclose the contents of the No-Fly List, there is no way of knowing how many citizens abroad Defendants place on the list. But the government's own description makes clear that federal departments and agencies, including the FBI, add persons to the Terrorist Screening Database, from which the No-Fly List is derived, "through an ongoing

---

[5] To consolidate the numerous watch lists, Homeland Security Presidential Directive 6 (HSPD-6) was established September 2003 leading to creation of the Terrorist Screening Center (TSC). 2003 Pub. Papers 1174 (Sept. 16, 2003). The No-Fly List, maintained by TSA, is a subset of a larger database of identified or suspected terrorists known as the Terrorist Screening Database maintained by TSC.

nomination and review process." *Commerce, Justice, Science, And Related*

*Agencies Appropriations For Fiscal Year 2017: Hearing Before the S. Subcomm.*

*of the Comm. on Appropriations*, 114th Cong. (S. Hrg. 114, Jan. 20, 2016), at p. 76

(statement of Atty. Gen. Loretta Lynch).  Defendants' ongoing policy of placing

citizens abroad on their No-Fly List demonstrates that the injury Fikre suffered is

capable of repetition against others.  Fikre's No-Fly List challenge is a classic case

of one capable of repetition yet evading review.  Because the district court's sole

grounds for dismissal was mootness we do not address the merits of the due

process claims at this time.

## II.     The Complaint States a Fourth Amendment Claim for Unlawful Surveillance, Search, and Seizure

In addressing the Fourth Amendment claim, the district court's position

changed over time.  In reviewing the fourth amended complaint, the district court

first accepted and interpreted facts in a light most favorable to Fikre and found

the claim was adequately stated. Docket 81 at 28-32, ER-47-51.  Later, in

addressing the fifth amended complaint, the court interpreted those same facts as

conclusory.  *See* Opinion, Docket 105 at 32, ER-152. The district court

dismissed Fikre's Fourth Amendment claim (Claim Twelve of the 5AC) for

failure to state a claim.  Order at 29-35, ER 149-155.  In its analysis, however,

the district court imported allegations pleaded in the alternative in other counts and also imposed on Fikre the burden of defeating in his complaint a potential defense—the possible existence of a FISA order or other purported legal authority—that the government defendants have not even yet asserted. Both of these analytic moves were erroneous.

Fikre's Fourth Amendment claim is Claim Twelve of the Fifth Amended Complaint. Its allegations consist of paragraphs 1 to 84 and paragraphs 135 to 141 of the Fifth Amended Complaint. 5AC ¶¶135, 136-141, ER-105-106. Paragraphs 77 to 82 describe the interception of Fikre's telephone calls, emails, and text messages within the United States, and the subsequent dissemination and use of those communications. 5AC ¶¶77-82, ER-90-91.

Fikre alleges he and his brother in 2010 while in the U.S. worked to create a lawful business venture abroad and discussed the parameters of the venture including financial resources by phone, e-mail, and text message. 5AC ¶77, ER-90. Fikre alleges "defendants were intercepting and/or acquiring the content of plaintiff's telephone calls, his text messages and his e-mail." 5AC ¶78, ER-91. Fikre alleges while tortured in UAE he was questioned by his captors by means of a forced lie detector test about his financial arrangements. 5AC ¶50, ER-84. Fikre alleges that both the FBI agents in Khartoum and his Captors in UAE

34

questioned him about activities at the as Saber Mosque in Portland which plaintiff had attended for prayer and about the source of his financial support for is business endeavors—information he discussed in telephone calls and electronic communications with his brother. 5AC ¶¶ 35, 44, ER-79, 82. The government admitted the surveillance in a prosecution it initiated against Fikre and his brother. 5AC ¶78, ER-91.

The Fifth Amended Complaint further alleges that plaintiffs' telephone communications, emails, text messages, and other communications are protected by the Fourth Amendment and that Fikre has a reasonable expectation of privacy in them. 5AC ¶137, ER-105. The complaint also alleges that the government defendants searched and seized Fikre's telephone calls, emails, and text messages. 5AC ¶138, ER-105. The complaint alleges that the government defendants acted without a warrant, probable cause, or reasonable suspicion, and that the search and seizure was unreasonable. 5AC ¶138, ER-105.

Those allegations are more than sufficient to state a claim for a Fourth Amendment violation. The fact of the surveillance is more than surmise and speculation; the government admitted the surveillance in the prosecution it initiated against Fikre and his brother. The claim is also legally sufficient. It is well established that the Fourth Amendment protects telephonic and electronic

communications.  *Berger v. New York*, 388 U.S. 41, 51 (1967); *Katz v. U.S.,* 389

U.S. 347, 353 (1967); *see also U.S. v. Cotterman*, 709 F.3d 952, 964 (9th Cir.

2013) (en banc); *U.S. v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010).  The

complaint alleges that the communications were searched and seized without a

warrant, without probable cause or reasonable suspicion, and that the search and

seizure was unreasonable.

Thus, the district court erred in dismissing the claim.  The district court

found no defect within the four corners of the claim.  Instead, it impermissibly

imported allegations from other claims to defeat the Fourth Amendment claim.

The district court held that "[t]he only plausible, factual conclusion that can be

drawn from Plaintiff's FAC, therefore, is that Official Capacity Defendants

conducted surveillance that captured Plaintiff's communications pursuant to

FISA"—but it based this conclusion on paragraphs 146 and 147 of the complaint

(ER-17-108), allegations that are part of Claim Thirteen (alleging a FISA

violation), not part of Claim Twelve, the Fourth Amendment claim.  Order at 32,

ER-152.  The Fourth Amendment claim, by contrast, does not allege that the

surveillance was conducted pursuant to FISA.[6]

---

[6] The Fourth Amendment claim at paragraphs 139 and 141 does allege that any
purported authorization of the surveillance under FISA or the Patriot Act would be
unconstitutional.  But these allegations are the anticipation of a potential defense of

The district court's importation of paragraphs 146 and 147 from Claim Thirteen (FISA violation) into Claim Twelve (Fourth Amendment violation) was an egregious error. Federal Rule of Civil Procedure 8(d)(2) expressly permits pleading in the alternative: "A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."

Both the Supreme Court and this Court have affirmed the freedom to plead alternative or inconsistent allegations. "Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically,' and to 'state as many separate claims or defenses as the party has regardless of consistency.' " *Cleveland v. Policy Mgmt. Sys. Corp.,* 526 U.S. 795, 805 (1999) (quoting former Fed. R. Civ. P. 8(e)(2)); *accord Molsbergen v. U.S.,* 757 F.2d 1016, 1019 (9th Cir. 1985) ("a policy which permits one claim to be invoked as an admission against an alternative or

authorization under FISA or the Patriot Act, not a factual allegation that such authorization exists. The defendants have never come forward with any FISA court order purporting to authorize the surveillance that captured Fikre's communications, nor have they asserted that the surveillance was authorized by any specific provision of FISA.

inconsistent claim would significantly restrict, if not eliminate, the freedom to plead inconsistent claims").

Moreover, even in Claim Thirteen (FISA violation), Fikre does not allege that the surveillance was "pursuant to" FISA or lawfully authorized under FISA. To the contrary, Claim Thirteen alleges that the surveillance was conducted under "*purported* FISA authority" (5AC ¶144, ER-107, emphasis added) but in fact "was *not* authorized or conducted pursuant to the strict FISA procedural requirements, certifications, and privacy protections" (5AC ¶147, ER-107-108, emphasis added). So even if importing allegations willy-nilly from other claims were permissible, the district court bungled the job.

The district court further compounded its error by holding that not only had Fikre alleged as part of his Fourth Amendment claim that the surveillance was "pursuant to" FISA but that as a matter of law surveillance "pursuant to" FISA can never violate the Fourth Amendment, regardless of the facts. Order at 32. ER-152. (Indeed, it went so far as to cast on Fikre the burden of showing that *all* FISA surveillance violates the Fourth Amendment as a matter of law: "Because Plaintiff has not established such surveillance [i.e., surveillance pursuant to FISA] violates the Fourth Amendment as a matter of law, the Court

dismisses Plaintiff's Claim Twelve.")   That is an absurd conclusion for multiple

reasons.

First, it is as absurd to say that surveillance "pursuant to" FISA always

complies with the Fourth Amendment as it would be to say that a search warrant

pursuant to Federal Rule of Criminal Procedure 41 or a wiretap order pursuant to

Title III (18 U.S.C. § 2516) always complies with the Fourth Amendment.  It all

depends on the facts, and at this stage there are no facts in the complaint, much

less in the record, that would demonstrate as a matter of law that the surveillance

of Fikre complied with the Fourth Amendment.  To the contrary, the complaint's

factual allegations are that protected communications were intercepted and that

the interception was unauthorized by any warrant, without probable cause or

reasonable suspicion, and unreasonable.  5AC ¶138, ER-105.

Second, FISA has many provision and procedures by which electronic

surveillance may be conducted.  These include "traditional" FISA orders issued

by the Foreign Intelligence Surveillance Court ("FISC") under 50 U.S.C. § 1804,

surveillance authorized by the Executive without any FISC order under 50 U.S.C.

§ 1802, and mass surveillance under 50 U.S.C. § 1881a without any FISC review

of the identities of the surveillance targets or the locations where surveillance is

conducted.  Defendants have never stated which provisions of FISA, if any, they

relied on in conducting the surveillance that captured Fikre's communications. They have not introduced into the record any FISC order authorizing the surveillance. In the absence of these fundamental facts, there is no basis for concluding either that the surveillance was in fact pursuant to FISA, that it complied with FISA's requirements, or that it complied with the Fourth Amendment as a matter of law. In nonetheless reaching that untenable conclusion, the district court simply made up facts that are absent not only from the complaint but from the record as a whole and used these hypothetical "facts" to find the allegations of the Fourth Amendment claim to be factually untrue.[7]

Accordingly, the district court's dismissal of the Fourth Amendment claim was erroneous and should be reversed. Before Plaintiff amended the complaint to allege—not in his Fourth Amendment claim but in his FISA claim—that the surveillance was done under "purported FISA authority," the court found Fikre had pled sufficient facts to support his Fourth Amendment claim for injunctive relief. *See* Opinion docket 81 at p. 32, ER-51. It is problematic and inconsistent

---

[7] Even if the government defendants were to show that the surveillance were conducted "pursuant to" FISA, that would be only the beginning, not the end, of the analysis. Among the further questions would be whether the surveillance, even if conducted under color of FISA, actually complied with FISA's requirements and whether, even if the surveillance were conducted under color of FISA and complied with all of FISA's requirements, the surveillance also complied with the Fourth Amendment. Answering those questions lies far beyond the scope of a motion to dismiss.

to conclude that absent allegations of surveillance under FISA that Fikre has

plead sufficient facts to support his fourth amendment claim for injunctive relief

and then to conclude after he pleads in a separate claim that surveillance was

done under "purported FISA authority" that he no longer has standing.  To allow

the ruling to stand would only serve to cause confusion in future Fourth

Amendment analysis.


## III.    The District Court Improperly Concluded that Declaratory Relief Was Not Available for the Fourth Amendment Claim

Defendants moved to dismiss Fikre's Fourth Amended Complaint,

including his Fourth Amendment claim.  Docket No. 69.  In ruling on the motion

to dismiss, the district court held that no declaratory relief, only injunctive relief,

was potentially available to redress this claim.  Docket No. 81 at 32, ER-51.  The

district court's ruling was error.[8]

---

[8] The district court dismissed Fikre's prayer for declaratory relief on his Fourth Amendment claim (Claim 15 of plaintiff's Fourth Amended Complaint) for lack of standing only, not on the merits.  "*Mayfield*, therefore, forecloses Plaintiff's Claim Fifteen for declaratory relief.  Accordingly, the Court concludes Plaintiff lacks standing to seek declaratory relief on Claim Fifteen."  Docket 81, page 31 opinion and order, ER-50.  The court did so with prejudice "…the Court grants the Official Capacity Defendants' Motion to Dismiss as to Plaintiff's requested declaratory relief on Claim Fifteen and dismisses that portion of Claim Fifteen with prejudice".  Docket 81, page 32 Opinion and Order, ER-51.

The district court's basis for allowing Fourth Amendment injunctive relief but not declaratory relief is erroneous and has the potential for further confusion in similarly situated cases. The *Mayfield* case that the court relied on for denying declaratory relief did so only because the plaintiffs in that case had agreed to forego injunctive relief in a settlement with the United States after filing the complaint. In that case, the Ninth Circuit found that because injunctive relief was foreclosed by the settlement, declaratory relief would not redress any injury to the plaintiffs. The court reasoned that there was no guarantee the government in response to declaratory relief would voluntarily take positive actions, i.e., destroy derivative materials, refrain from sharing contents of communications with third parties, etc., absent the use and availability of injunctive relief.

> Mayfield unquestionably had standing to seek damages and injunctive relief when he filed the original complaint. … Having bargained away all other forms of relief, Mayfield is now entitled only to a declaratory judgment. Although it is undisputed that the government retains materials derived from the FISA searches and surveillance of Mayfield's property, the only relief that would redress this alleged Fourth Amendment violation is an injunction requiring the government to return or destroy such materials.

*Mayfield v. U.S.,* 588 F.3d 1252, 1260 (9th Cir. 2009).

The *Mayfield* case is inapposite to Fikre's case on redressability. Here, unlike the *Mayfield* case, Fikre has not settled away his right to injunctive relief

or had his injuries redressed.  Thus, both declaratory and injunctive relief remain available.  It would be inconsistent to hold in the *Mayfield* case plaintiff had standing to seek relief for unlawful surveillance before settling away his injunctive relief but to say plaintiff in the present case does not when no such settlement or agreement exists.

In *Mayfield*, the government conceded it had derivative materials.   In the instant case we similarly have confirmation by the United States, through Department of Justice filings submitted in a since-dismissed prosecution against Fikre and his brother in the United States District Court for the Southern District of California, that it intercepted the contents of Fikre's telephone calls, emails, and text messages and has retained derivative materials that it has shared with other agencies and officials in other countries for the torture and interrogation of him.  *See* 5AC ¶78-82, ER-91.

Accordingly, the district court's ruling dismissing the prayer for declaratory relief should be reversed.

## CONCLUSION

The judgment dismissing claims One, Three, and Twelve should be reversed, the judgment dismissing the prayer for declaratory relief on Claim Twelve should be reversed, and the action remanded for further proceedings.

Dated: August 2, 2017

Respectfully Submitted,


/s/   Brandon Mayfield, OSB 000824
Thomas H. Nelson, OSB 78315
Gadeir Abbas, *pro hac vice*
Lena Masri, *pro hac vice*

Attorneys for Plaintiff-Appellant
       Yonas Fikre

# CERTIFICATE OF COMPLIANCE

**Form 8. Certificate of Compliance Pursuant to 9th Circuit Rules 28.1-1(f), 29-2(c)(2) and (3), 32-1, 32-2 or 32-4 for Case Number 16-36072**

I certify that:

This brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is less than 11,000 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable.  The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

Dated August 2, 2017

/s/  Brandon Mayfield
Brandon B. Mayfield, OSB No.  000824
Attorney for Plaintiff/Appellant

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2017, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated August 2, 2017

/s/ Brandon Mayfield
Brandon B. Mayfield, OSB No. 000824
Attorney for Plaintiff/Appellant